UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
LINDA POWELL,

                Plaintiff,

         - against -

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK and
THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF NEW YORK,

                Defendant.
------------------------------------------------------X

**MEMORANDUM & OPINION**

Case No. 14 CV 2363 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Linda Powell ("Plaintiff" or "Powell") brings this action against her former employer, Defendant Board of Education of the City School District of New York ("BOE" or "Defendant").[1] She alleges that the BOE discriminated against her, in violation of the Americans with Disabilities Act ("ADA"), and retaliated against her, in violation of the ADA and the Family Medical Leave Act ("FMLA"). The BOE moves to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

For the reasons set forth below, the Court grants the BOE's motion in part and denies it in part. Specifically, the Court dismisses with prejudice Plaintiff's ADA retaliation claim for

---

[1] Plaintiff initially named two defendants in this action: the Department of Education of the City of New York ("DOE") and the BOE. Defendant's memorandum in support of the motion to dismiss clarifies that the DOE is part of the BOE and, therefore, there is only one defendant in this action, the BOE. (Dkt. 18, Def. Memo at ECF 3.) (Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.) The Court therefore refers to Defendant in the singular.

failure to state a claim. Plaintiff's FMLA retaliation and ADA discrimination claims, however, survive.

I. BACKGROUND

A. Documents Attached to Defendant's Motion

When considering a motion to dismiss pursuant to FRCP 12(b)(6), the Court may consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir. 1999)). "Even where a document is not incorporated by reference, the [C]ourt may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). The Court may also take judicial notice of public records integral to the complaint but not attached to it, so long as the Court does not use such records to establish the truth of the matter asserted therein. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

Here, the BOE attached several exhibits to its motion. (*See* Dkt. 16, Osmond Decl.; Dkt. 17 (exhibits)). Plaintiff did not attach any exhibits to her Amended Complaint, so the Court must determine whether it may properly consider Defendant's exhibits. Exhibit A provides Plaintiff's employment history and the relevant codes associated with her medical leave, return from leave, and what the BOE terms "disability retirement". (Dkt. 16 at ECF 1–2; Dkt. 17 at ECF 1–4.) The Amended Complaint provides the approximate dates of Plaintiff's employment with the BOE, her medical leave, and her return from leave. (*See* Am. Compl., ¶¶ 6, 7, 9.) It does not give the date of her constructive discharge, nor does it allege how the BOE viewed her discharge. Thus,

the Court considers Exhibit A only to the extent it confirms, or supplies, dates of events referenced in the Amended Complaint.

Exhibit B is Plaintiff's Notice of Claim against the City. Exhibit C provides Plaintiff's New York State Division of Human Rights ("NYSDHR") complaint and the NYSDHR's determination and order following investigation ("NYSDHR Order"). Both Plaintiff's Notice of Claim and NYSDHR complaint are incorporated by reference in the Amended Complaint and, therefore, properly before this Court. (*See* Am. Compl., ¶¶ 2, 26.) However, the Complaint does not incorporate the NYSDHR Order by reference; thus, the Court takes judicial notice of the NYSDHR Order only for the fact of its existence, not for the truth of the matter asserted therein.

Finally, Defendant attaches, as Exhibit D, an excerpt of the collective bargaining agreement applicable to Plaintiff's employment. The Court finds this document is not properly before the Court because it is not incorporated by reference in the Amended Complaint and Defendant does not assert that it is a public record.[2] The Court therefore does not consider Exhibit D.

### B.     Facts[3]

Plaintiff began working for the BOE as a teacher in or around 1998, and received tenure in 2003. She most recently taught at the Women's Academy of Excellence, X282, in the Bronx, New York. (Compl., ¶ 6.)

---

[2]     Plaintiff's Complaint does reference the union contract, but only with respect to the school principal's observation of Plaintiff in the classroom on January 18, 2012. (Compl., ¶ 15.) The excerpt attached by the BOE, however, pertains to grievance procedures, which are not referenced anywhere in the Amended Complaint.

[3]     The Court takes the allegations in the Amended Complaint as true, as it must on a motion to dismiss under FRCP 12. *See EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 253 (2d Cir. 2014) ("[W]e accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.").

While employed at X282, Plaintiff suffered from a number of medical conditions, which she contends constituted disabilities or perceived disabilities within the meaning of the ADA. Her medical conditions included irritable bowel syndrome, Barrett's Esophagus, heart palpitations, depression, incontinence, and post-traumatic stress disorder.[4]  (Compl., ¶¶ 3, 7.)

In 2012, Plaintiff took an eight-month leave of absence for her medical issues.  (Compl., ¶ 7.)  Plaintiff requested, and was granted, leave under the FMLA for a portion of her leave of absence.  (Compl., ¶ 7.)  Her leave spanned from February 27, 2012 through September 30, 2012. (Dkt. 17 at ECF 1.)

Plaintiff returned to X282 in October 2012.  (Compl., ¶ 9.)  Upon her return, the principal, Dr. Arnette Crocker, began a pattern of harassing and humiliating acts against Plaintiff.  (Compl., ¶ 13.)  During Powell's medical leave, a teacher in the "absent teacher reserve," Pasqual Pelosi, covered Powell's classroom assignments.  (Compl., ¶ 9.)  Upon Powell's return, Dr. Crocker attempted to improperly deny Powell her teaching assignment in favor of Pelosi. (Compl., ¶ 9.)  On Powell's first day back, Dr. Crocker assigned Powell to cover a separate English program for several weeks.  (Compl., ¶ 9.)  During Powell's second week back, Dr. Crocker improperly asked students to vote on whether Powell should return as their teacher or keep Pelosi.  (Compl., ¶ 10.)  Plaintiff learned of the vote after the fact, and when she questioned Dr. Crocker about the vote, Dr. Crocker confirmed the vote had taken place in the auditorium.  (Compl., ¶ 10.)

Plaintiff insisted on her right to return to her prior assignment.  Dr. Crocker eventually assented, telling Plaintiff, "You win."  However, the administration did not keep her informed as

---

[4]  Barrett's esophagus is a condition where tissue in the esophagus, which is the tube connecting the mouth and stomach, is replaced by tissue similar to the intestinal lining.  *See* http://www.mayoclinic.org/diseases-conditions/barretts-esophagus/basics/definition/con-20027054 (last visited Sept. 25, 2015).

to the transition, and Plaintiff had to rely on Pelosi to let her know what steps were taking place before her reinstatement to her former assignment. (Compl., ¶ 12.) Though Plaintiff was ultimately returned to her assignment, Plaintiff's students were invited to openly criticize her, thus undermining her authority. (Compl., ¶ 13.)

On October 23, 2012, Plaintiff met with Dr. Crocker to discuss a classroom observation of Plaintiff that took place on January 18, 2012, before Plaintiff went on leave. (Compl., ¶ 14.) Plaintiff contends that the January 18, 2012 classroom observation violated her union contract, because it was not the agreed-upon formal observation that was supposed to take place on January 19, 2012. (Compl., ¶ 15.) Rather, it was an informal observation. (Compl., ¶ 15.) Not only did Dr. Crocker and an assistant principal observe Plaintiff a day earlier than what had been set, they also observed Plaintiff in a class that they had agreed not to observe because it was over-capacity. (Compl., ¶ 15.)

The October 23, 2012 meeting with Dr. Crocker began late because, as Plaintiff learned later, the assistant principal was typing up the results of the January 18, 2012 informal observation as a formal observation. (Compl., ¶ 16.) Dr. Crocker and the assistant principal presented the results to Plaintiff, and Dr. Crocker indicated that she would be rating the observation "unsatisfactory," which would have been the first such rating of Plaintiff's career. (Compl., ¶¶ 14, 16.) The meeting was cut short, to be rescheduled for a later date. (Compl., ¶ 16.) However, it was never resumed. (Compl., ¶¶ 14, 23.)

In November 2012, the assistant principal, Eric Ford, denied Plaintiff classroom resources that had been available to her as recently as the prior month. (Compl., ¶ 17.) Ford indicated that this denial was at the instruction of Dr. Crocker. (Compl., ¶ 17.) Powell requested

a poster for one of her lessons, and Ford advised her that Dr. Crocker instructed him not to make Plaintiff any more posters. (Compl., ¶ 17.)

In December 2012, Dr. Crocker attempted to frustrate Plaintiff's class trip by imposing several last-minute requests. (Compl., ¶ 18.)

On March 4, 2013, Plaintiff dropped off a new set of completed FMLA application forms to the school's main office. (Compl., ¶ 19.) The next day, two students informed Plaintiff that her medical and FMLA documents, which contained sensitive information about Plaintiff, had been scattered on a table in a public area used by students. (Compl., ¶ 20.) The students gathered the papers and gave them to Plaintiff. (Compl., ¶ 20.) Upon learning of this incident, Plaintiff became physically ill and upset. (Compl., ¶ 20.) She called the school's main office for coverage, and the school secretary, Stephanie Adams, sent a substance abuse prevention and intervention specialist to cover the last five minutes of Plaintiff's class. (Compl., ¶ 20.) Plaintiff spoke with Adams about her next class, and Adams indicated that a licensed teacher would cover it. (Compl., ¶ 20.) Plaintiff let Adams know that she was leaving for the day, and did so. (Compl., ¶ 20.)

On March 8, 2013, Plaintiff learned that the school was issuing a disciplinary charge against her for abandoning her classroom and leaving students with an unlicensed teacher on March 5, 2013. (Compl., ¶ 21.)

Plaintiff reported the March 5th incident, as well as the events of her October 23, 2012 meeting to her union, which subsequently notified the Superintendent. (Compl., ¶ 22.) Plaintiff received a disciplinary letter for reporting these incidents. (Compl., ¶ 22.)

On four days in April 2013 and May 2013, Dr. Crocker scheduled a meeting with Plaintiff, but canceled each one at the last minute. (Compl., ¶ 24.) Though Plaintiff repeatedly

asked Dr. Crocker about the nature of the meeting, Dr. Crocker failed to respond to her. (Compl., ¶ 24.) Dr. Crocker's actions exacerbated Plaintiff's medical conditions. (Compl., ¶ 24.)

On May 16, 2013, Plaintiff reviewed her personnel file and discovered that Dr. Crocker had issued an undated unsatisfactory rating against her, though they had never completed their meeting. (Compl., ¶ 23.) The undated rating was not signed by Plaintiff. (Compl., ¶ 23.) Plaintiff also discovered an "end of year" unsatisfactory rating in her file, dated June 22, 2012. (Compl., ¶ 23.) Plaintiff had never seen this rating and had not signed it. (Compl., ¶ 23.)

Due to the continued harassment she received at X282, Plaintiff was diagnosed with depression in the spring of 2013 and began to seek psychiatric treatment. (Compl., ¶ 25.) She also developed severe incontinence, which worsened in the spring of 2013. (Compl., ¶ 25.)

As a result of Dr. Crocker's actions, Plaintiff was compelled to retire. (Compl., ¶ 32.) Her last day of employment was June 14, 2013. (Dkt. 17 at ECF 1.)

### C.   Procedural History

Prior to filing this suit, Plaintiff filed a Notice of Claim with the DOE, alleging disability discrimination, on June 10, 2013. (Compl., ¶ 26; Dkt. 17-1 at ECF 1.)[5] On July 3, 2013, Plaintiff filed a formal complaint with the NYSDHR. (Compl., ¶ 2; Dkt. 17-2 at ECF 1.)

Plaintiff filed this action on April 14, 2014, and contends she commenced her suit within 90 days of receiving a notice of right to sue. (Dkt. 1, Compl., ¶ 2.) Defendant does not dispute the timeliness of Plaintiff's action, so the Court presumes that this action was timely filed. On October 17, 2014, Plaintiff filed an Amended Complaint, adding an additional claim of

---

[5]   Plaintiff's Complaint alleges that she filed her Notice of Claim in April 2013, but the actual Notice of Claim shows a filing date of June 10, 2013. The Court determined in Section I.A, *supra*, that it could properly consider the Notice of Claim.

retaliation under the FMLA. (Dkt. 11, Am. Compl.) On January 23, 2015, Defendant moved to dismiss the Amended Complaint, in its entirety, for failure to state a claim. (Dkt. 15.)

## II. STANDARD OF REVIEW

To withstand a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The liberal notice pleading standard of FRCP 8(a) only requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 573. Under FRCP 8(a)(2), the complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* A complaint must contain enough factual material to "'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570), and should be dismissed where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. That "it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . is not the test." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (citing *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. DISCUSSION

### A. Applicable Pleading Standard

As an initial matter, the Court notes that, in moving for dismissal of Plaintiff's claims, Defendant argues that Plaintiff has failed to establish a *prima facie* case of discrimination or retaliation pursuant to the ADA or the FMLA. (*See, e.g.*, Def. Memo at ECF 8 ("To state a *prima facie* case of disparate treatment on the account of disability . . ."); Def. Reply Memo at ECF 2 ("To establish a *prima facie* case for these claims, plaintiff must plausibly allege . . . .").)

A complaint alleging discrimination claims, however, "need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss[.]" *EEOC v. Port Auth.*, 768 F.3d at 254; *see also Giambattista v. American Airlines, Inc.*, 584 F. App'x 23, 24 (2d Cir. 2014) (summary order) (applying *EEOC v. Port Authority* pleading standard in ADA discrimination case); *Smith v. Westchester County*, 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011) ("a complaint asserting an employment discrimination claim, including an FMLA retaliation claim, need not plead specific facts establishing a *prima facie* case of discrimination in order to survive a motion to dismiss." (citation omitted)). So long as the plaintiff provides a "short and plain statement of the claim that shows" she is entitled to relief and gives the defendant "fair notice" of her claim, the Court will find that the claim in question survives a FRCP 12(b)(6) motion to dismiss. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing *Swierkiewicz*, 534 U.S. at 512); *see also Harper v. NYCHA*, 673 F. Supp. 2d 174, 178 (S.D.N.Y. 2009) (citing *Kassner* in FMLA retaliation case).

Thus, at the pleading stage, a plaintiff is "not required to 'demonstrate' or 'establish' discrimination[.]" *Vega v. Hempstead Union School Dist.*, No. 14-2265-cv, 2015 WL 5127519, at *10 n.8 (2d Cir. Sept. 2, 2015). A plaintiff need only plausibly allege a claim upon which relief can be granted. *Id*. (citing *Kassner*, 496 F.3d at 237.) With respect to a claim of employment discrimination, the plaintiff must plausibly allege that "the employer took adverse action against her at least in part for a discriminatory reason", and plead facts that either directly show discrimination or give rise to a plausible inference of discrimination. *Id*. at *12.

B.   **FMLA Retaliation Claim**

The FMLA allows eligible employees to take up to twelve weeks of leave, unpaid, because of a serious health condition that makes the employee unable to work. *See* 29 U.S.C. § 2612(a)(1)(D); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006)

(quoting 29 U.S.C. § 2612(a)(1)(D)). The statute further provides that at the end of an employee's leave, she has the right to return to the position she held before taking leave or its equivalent. 29 U.S.C. § 2614.

In an FMLA retaliation claim, an employee asserts that her employer discriminated against her because she engaged in activity protected under the FMLA. *Smith*, 769 F. Supp. 2d at 469. To successfully state a claim for FMLA retaliation, Powell must plausibly allege that she exercised rights protected by the FMLA and that she suffered an adverse employment action under circumstances giving rise to an inference of retaliatory intent. *See id*. Defendant disputes the plausibility of the Amended Complaint with respect to the adverse employment action alleged by Powell. Defendant argues that Powell has failed to plausibly allege facts giving rise to constructive discharge.[6] (*See* Def. Memo at ECF 8–13.)

For purposes of a FMLA retaliation claim, an adverse employment action is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights."[7] *Millea v. Metro-N. R. Co.,* 658 F.3d 154, 164 (2d Cir. 2011) (applying Title VII retaliation standard for adverse employment actions to FMLA retaliation claims). So long as Powell has plausibly alleged that she suffered an action by the BOE that is likely to dissuade a reasonable worker in her position from taking leave under the FMLA, her

---

[6] The BOE also argues that Plaintiff's claims fail because she does not plead facts showing that she sought redress in accord with her union's collective bargaining agreement. (*See* Def. Memo at ECF 13–14, 16.) However, the Court has excluded the collective bargaining provisions from consideration at this stage of proceeding. *See* Section I.A, *supra*. The BOE does not otherwise provide any authority for the proposition that Powell's alleged failure to avail herself of the union's grievance process is somehow jurisdictional. The Court finds that the BOE's argument regarding the union's grievance process is an issue better left to the summary judgment stage.

[7] Notably, this standard is different than for a discrimination claim. *See supra* at 13.

claim may proceed.  Thus, contrary to Defendant's motion, Powell need not establish that she suffered a constructive discharge for her FMLA retaliation claim to go forward.

Powell alleges that, upon her return to work from FMLA leave: (1) Dr. Crocker denied Powell her regular teaching assignment and then asked students to vote on whether she should return as their teacher; (2) after eventually agreeing to reinstate Powell to her regular teaching assignment, Dr. Crocker failed to keep Powell informed about the transition; (3) students were invited to openly criticize Powell;[8] (4) Dr. Crocker told Powell that she would be receiving an "unsatisfactory" rating based on a classroom observation that happened before Powell's leave; (5) Dr. Crocker placed the "unsatisfactory" rating in Powell's file, without completing her meeting with Powell to discuss the rating; (6) at Dr. Crocker's direction, the school denied Powell classroom resources previously made available to her; (7) Dr. Crocker attempted to frustrate Powell's class trip with last-minute requirements; (8) Powell's medical and FMLA paperwork were scattered on a table in a public area; (9) Powell was issued a disciplinary charge for abandoning her classroom after she became ill over the paperwork incident, even though she informed school staff that she was leaving, and requested coverage for her classroom; and (10) upon reporting to her union the paperwork incident and events related to her unsatisfactory rating, Powell was again disciplined.

Viewing these allegations in the light most favorable to Powell, the Court finds that she has plausibly alleged that she suffered actions by the BOE that would likely dissuade a reasonable worker in her position from taking leave under the FMLA.  Considering, in particular, Powell's allegations regarding the difficulties she encountered upon returning from leave with respect to her teaching assignment and the students, the unsatisfactory ratings placed in her

---

[8]  Powell's Amended Complaint does not allege at whose direction this took place.

personnel file, the scattering of her sensitive medical and FMLA documentation in a public area, and the disciplinary charges she received as a result of the paperwork incident and her complaints to her union, Powell has plausibly alleged that she suffered an adverse employment action under circumstances giving rise to a retaliatory inference. At a minimum, Powell has given fair notice to Defendant of her FMLA retaliation claim. *See Smith*, 769 F. Supp. 2d at 470 (finding plaintiff plausibly alleged an FMLA retaliation claim based on allegations that he was placed on attendance review after using FMLA leave and his employer withheld his salary); *Peterson v. Long Island R. Co.*, No. 10 CV 480, 2010 WL 2671717, at *3 (E.D.N.Y. June 30, 2010) (finding plaintiff's allegations "more than sufficient to give LIRR fair notice" of his FMLA retaliation claim where plaintiff alleged that his supervisor made degrading comments to plaintiff and was falsely charged with assault). The Court thus denies Defendant's motion to dismiss with respect to Powell's FMLA retaliation claim.

### C. ADA Discrimination

"The ADA prohibits discrimination against 'a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Dawson v. New York City Transit Auth.*, No. 14-4315-cv, 2015 WL 5438790, at *1 (2d Cir. Sept. 16, 2015) (summary order) (quoting 42 U.S.C § 12112(a)). To state a claim of discrimination under the ADA, Powell must plausibly allege (1) that she was a member of a protected class, (2) that she was qualified, (3) that she suffered an adverse employment action, and (4) facts providing at least minimal support for the proposition that Defendant was motivated by discriminatory intent. *See id*. (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

For purposes of an ADA discrimination claim, an adverse employment action is a "'materially adverse change in the terms and conditions of employment.'" *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). Constructive discharge, which occurs when the employer "'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation'", constitutes an adverse employment action. *Id.* at 59. (quoting *Morris v. Schroeder Capitol Mgmt. Int'l*, 48 F.3d 86, 88 (2d Cir. 2007) (internal quotations omitted)). If a "reasonable person *subjected to the same conditions as the plaintiff* would have felt compelled to step down," a claim for constructive discharge may proceed. *See Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996) (emphasis in original). The Court analyzes the sufficiency of Plaintiff's allegations regarding her working conditions on a cumulative basis. *Id.* (finding error in the district court's treatment of the various conditions set forth by plaintiff "as separate and distinct rather than additive").

Though Plaintiff's allegations regarding the conditions she faced at work may not establish a constructive discharge for purposes of a *prima facie* case of ADA discrimination, the Court finds Powell has given fair notice to the BOE of her claim that she was constructively discharged. The Court therefore declines to dismiss Powell's ADA discrimination claim, finding she has plausibly alleged that she suffered an adverse employment action.[9]

---

[9] Indeed, because Powell's ADA discrimination claim arises from the "same factual predicate" as her FMLA retaliation claim, "it makes little sense to grant a motion to dismiss as to [her ADA claim], as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted." *See Thibodeaux v. Travco Insurance Co.*, No, 13 CV 5599, Slip. Op. at * 2 (E.D.N.Y. Jan. 31, 2014).

### D. ADA Retaliation Claim

The ADA also prohibits an employer from discriminating against an individual because she has opposed any act or practice made unlawful by the ADA or because she made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 12203(a). To state a claim for retaliation under the ADA, the plaintiff must allege that (1) she engaged in an activity protected by the ADA; (2) the employer was aware of the activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Caskey*, 560 F. App'x at 58 (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). Just as with Powell's FMLA retaliation claim, a plaintiff plausibly alleges an adverse employment action for purposes of an ADA retaliation claim by alleging any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising her legal rights. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 439-40 (E.D.N.Y. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006)).

The Court finds that Powell's ADA retaliation claim fails for lack of a causal connection between the alleged adverse action against her and the protected activity. While Powell fails to identify her "protected activity", she could be referring to her NYSDHR complaint, Notice of Claim to the DOE, or complaint to the Union, which was forwarded to the Superintendent. *See Dillon v. Ned Mgmt. Inc.*, 85 F. Supp. 3d 639, 659 (E.D.N.Y. Feb. 2, 2015) (noting protected activity for purposes of a retaliation claim can take the form of either formal or informal complaints). Powell's Amended Complaint, however, fails to plausibly allege that she suffered an adverse employment action following any of these activities.

As the BOE correctly notes, Powell cannot rely on her July 3, 2013 NYSDHR complaint to constitute the "protected activity" for her ADA retaliation claim, because she retired before

filing that complaint. *See Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 102 (2d Cir. 2001) (noting the plaintiff's retaliation claim under the ADA could only arise after she filed an EEOC charge); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 182–83 (S.D.N.Y. 2011) (finding no causal connection to support plaintiff's Title VII retaliation claim where the "adverse employment action predated [plaintiff's] filing of a complaint with the EEOC"). Nor can Powell plausibly rely on her Notice of Claim, which she filed four days before her retirement on June 14, 2013. Although Powell alleges that she was constructively discharged due to events that transpired between October 2012 and June 2013, she does not specifically allege any adverse action that the BOE took against her between June 10–14, 2013. Finally, assuming Powell made her complaint to the Union between March 2013 and her retirement in June 2013,[10] the only employment action alleged to have taken place during this period is Dr. Crocker's scheduling of four meetings with Powell and cancelling each one at the last minute.[11] At most, these actions only inconvenienced Powell, and therefore are not sufficiently adverse so as to dissuade a reasonable worker in Powell's position from making a complaint. *See Taylor v. New York City Dep't of Educ.*, No. 11 CV 3582, 2012 WL 5989874, at *7–8 (E.D.N.Y. Nov. 30, 2012) (noting courts in the Second Circuit have found employer actions resulting in mere inconvenience to the plaintiff insufficient to plausibly allege an adverse employment action for purposes of a retaliation claim) (citing cases).

---

[10] Powell does not allege an exact date of her complaint to the Union. The Court presumes it occurred after the paperwork incident, which occurred in March 2013, because her complaint was premised in part on that incident.

[11] Powell alleges that she discovered the unsatisfactory ratings in May 2013, but does not allege when these were placed in her file. Because Powell alleges that one was dated during the period when she was on FMLA leave, and that Dr. Crocker first indicated in October 2012 that she would be rating Powell's performance as unsatisfactory, the Court assumes that the ratings were placed in Powell's file before Powell made her Complaint to the union.

Finding that Plaintiff has failed to plausibly allege that she suffered an adverse employment action as a result of engaging in ADA-protected activity, the Court dismisses her ADA retaliation claim.

## IV. CONCLUSION

The Court therefore grants the BOE's motion in part and denies it in part. Plaintiff's ADA retaliation claim is dismissed with prejudice from the Amended Complaint. Plaintiff's FMLA retaliation and ADA discrimination claims remain in the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2015
Brooklyn, New York

16